UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J.M.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-79** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "H" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for supplemental security income under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.    BACKGROUND**

Plaintiff, a minor child, filed an application for SSI on April 26, 2011, alleging a disability onset date of July 1, 2010. (Adm. Rec. at 13, 82-87). Plaintiff alleges disability due to attention-deficit hyperactivity disorder ("ADHD"). (*Id.* at 46). Plaintiff, born on September 5, 2004, was five years old on the date on which he alleged disability and eight years old at the time of the final administrative decision. (*Id.*). Plaintiff was in kindergarten at the time he filed the application. (*Id.* at 136). Plaintiff has no past work experience.

Defendant initially denied plaintiff's application on August 12, 2011. (*Id.* at 13, 55-58).

Plaintiff sought an administrative hearing, which defendant held on May 30, 2012. (*Id.* at 30-44. Plaintiff and his mother testified at the hearing.

On October 26, 2012, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff had not been disabled through the date of the decision. (*Id.* at 13-26). In the decision, the ALJ concluded that plaintiff has the severe impairments of ADHD and borderline intellectual functioning. (*Id.* at 16). She found that, as a school-age child, plaintiff had not engaged in substantial gainful activity. (*Id.*). The ALJ then held that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations. (*Id.*). Lastly, she concluded that plaintiff does not have an impairment or combination of impairments that functionally equals the severity of any impairment in pt. 404, subpt. P, app. 1. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled. (*Id.* at 6-7). On November 7, 2013, the Appeals Council denied plaintiff's request. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them.

*Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

**III.   ENTITLEMENT TO BENEFITS UNDER THE ACT**

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment

4

> must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

**IV.    ISSUES ON APPEAL**

There are two issues on appeal:

(1)    Whether the ALJ erred when she failed to assign controlling weight to plaintiff's treating physician.

(2)    Whether substantial evidence supports the ALJ's conclusion that plaintiff does not meet or medically equal any listing.

## V.   ANALYSIS

### 1.   Whether the ALJ erred when she failed to assign controlling weight to plaintiff's treating physician.

Plaintiff argues that the ALJ should have given controlling weight to the opinion of his treating physician, Lolita Gonzales, M.D., who saw plaintiff on approximately four occasions. Plaintiff contends that the report of Gonzales is consistent with the reports of other physicians and the testimony of plaintiff's mother and supports Gonzales's conclusion that plaintiff has a marked limitation in acquiring and using information and attending to and completing tasks.

Over six months after the hearing, and over a month after the ALJ issued her decision, Gonzales completed a form at the request of plaintiff's counsel in which she opined that plaintiff had marked limitations in the domains of acquiring and using information and attending to and completing tasks. (Adm. Rec. at 239-243). The Appeals Council considered the form and made it a part of the record but evidently determined that it did not provide a basis for reversing the ALJ's decision. (*Id.* at 5). Because the text of the Appeals Council's decision makes clear that it considered Gonzales's form and found the ALJ's decision supported by the record as a whole, including the newly submitted evidence, the Court finds that remand for further consideration is inappropriate.

The objective medical evidence of record fails to support Gonzales's opinion. As the ALJ noted, the domain of acquiring and using information considers how well plaintiff acquires and learns information, and how well the information is used once learned. (*Id.* at 20-21); *see* 20 C.F.R. § 416.926a(g). The ALJ found that plaintiff had less than a marked limitation in this domain. (*Id.* at 21).

To develop the medical evidence of record, the Commissioner sent plaintiff for a mental functioning examination with Thomas M. Welsh, Ph.D., on July 14, 2011.  (*Id.* at 19, 212-216).  Welsh administered an IQ test and assessed plaintiff with borderline intellectual functioning, an opinion with which the ALJ agreed. (*Id.* at 19, 212-216). In addition, on August 11, 2011, state-agency physician Robert McFarlain, Ph.D., reviewed the evidence of record and opined that plaintiff has less than marked limitations in the domains of acquiring and using information and attending to and completing tasks.  (*Id.* at 19, 50-52).  In addition, plaintiff underwent a psychological assessment with Scuddy F. Fontenelle III, Ph. D., who found no deficits in plaintiff's thought processes, thought content, perceptual abnormalities, mood/affect, sensorium/cognition, judgment/insight, and functional capacities.  (*Id.* at 19, 206-08).  And while both Welsh and Fontenelle agree that plaintiff has ADHD, all physicians concurred that he responds well with his current medication, 20 milligrams of Vynase.  (*Id.* at 19-20).

The ALJ considered each of these opinions and opted to give great weight to those of Welsh and McFarlain, especially given that they were supported by the "partially credible" testimony of plaintiff's mother.  (*Id.* at 19-20).  It is well-established that the ALJ is entitled to determine the credibility of the examining physicians and medical experts and weigh their opinions accordingly. *See Greenspan*, 38 F.3d at 237.

The ALJ considered Welsh's assessment of borderline intellectual functioning and the fact that plaintiff repeated kindergarten and was scheduled to be placed in special education classes for the upcoming school year. (*Id.* at 21, 212-216). The ALJ also considered statements by two of plaintiff's teachers, Mrs. Hutchinson and Ms. Laborde, who both noted that plaintiff had limitations

in this domain and received extra time for test taking and small group instruction by his teachers. (*Id.* at 21, 92-99, 111-120). Thus, although the ALJ agreed that plaintiff had limitations in this domain, they were not severe enough to be considered "marked." (*Id.* at 20-21). In contrast to the ALJ's consideration of this domain, at the request of plaintiff's counsel, Gonzales checked a box and wrote "marked." (*Id.* at 240). Gonzales's check-the-box form is a conclusory statement entitled to little weight. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (finding that statements by treating physicians that are brief, conclusory, and not supported by medical evidence may be disregarded); *see also Peck v. Barnhart*, 214 Fed. Appx. 730, 738 (10th Cir. 2006) (holding that the ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best . . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ." (quotation omitted)); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."). Moreover, the check-mark form was created after the hearing in this matter and after the ALJ rendered her opinion, which indicates it was created for litigation purposes. Medical assessments

prepared for the sole purpose of a claimant's attaining disability benefits are entitled to diminished weight. *Bienemy v. Astrue*, Civ. A. No. 11-616, 2012 WL 910229 at *8 (E.D. La. Feb. 13, 2012) (holding that a form completed two days prior to hearing "raises the specter that it was prepared in anticipation of litigation and is thus entitled to diminished weight").  In any event, an ALJ may disregard a medical assessment when it is brief and conclusory. *Greenspan*, 38 F.3d at 237.

The domain of attending to and completing tasks assesses how well a child is able to focus and maintain attention, how well a child begins, carries through, and finishes activities (including the pace at which activities are performed), and the ease with which the child changes activities. 20 C.F.R. § 416.926a(h). Attending to and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time. *See id.* The ALJ considered plaintiff's conditions of ADHD and borderline intellectual functioning and found that they undermined his ability during regular classroom instruction to remain on task, concentrate, and follow core promotional concepts in a regular educational setting. (Adm. Rec. at 22). The ALJ also noted, however, that plaintiff was compliant with his medication, and she noted that both plaintiff's mother and Gonzales noted improvement of plaintiff's ADHD with this medication. (*Id.* at 22, 222). Conditions reasonably remedied with treatment are not disabling. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). After consideration of this evidence, the ALJ opined that plaintiff had a less than marked limitation in this domain.  (Adm. Rec. at 22). Again, in contrast, Dr. Gonzales checked a box and wrote "marked." (*Id.* at 240).

Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a

claimant's disability status." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (Citing Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994)). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Id.* "It is, of course, for the Secretary to decide what weight to accord various medical reports." *Johnson*, 864 F.2d at 347. Accordingly, the Court finds that the Commissioner's decision to give less weight to the opinion of plaintiff's treating physician is entitled to deference. *See Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

> **2. Whether substantial evidence supports the ALJ's conclusion that plaintiff does not meet or medically equal any listing.**

After she concluded that plaintiff did not meet or medically equal a Listing, the ALJ considered whether plaintiff functionally equals a Listing. (*Id.* at 16-25). To establish functional equivalence, a plaintiff "must present findings equal in severity to all the criteria for the one most similarly listed impairment." *See Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir. 1995). For the Commissioner to find him disabled as a result of "functional equivalence," plaintiff's impairments must be of listing-level severity, which means that the impairments must result in at least two areas of "marked" limitation or at least one area of "extreme" limitation of functioning. *See* 20 C.F.R. § 416.926a.[1] In conducting her functional equivalence analysis, the ALJ properly considered the following six domains of functioning: acquiring and using information, attending and completing, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. (*Id.* at 20-25). Plaintiff argues that he meets Listings 112.11 and/or 112.05.

---

[1] From the record, it appears that no physician has opined that plaintiff has an "extreme" limitation in any domain of functioning.

Listing 112.11 covers ADHD and is manifested by developmentally-inappropriate degrees of inattention, impulsiveness, and hyperactivity. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.11. This listing is met when a plaintiff has: [A.] Medically documented findings of all three of the following: 1. Marked inattention; and 2. Marked impulsiveness; and 3. Marked hyperactivity; AND [B.] For children ages 3 to 18, resulting in at least two of the following criteria: (a). Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings and including, if necessary, the results of appropriate standardized psychological tests; or (b). Marked impairment in age-appropriate social functioning, documented by history and medical findings and including, if necessary, the results of appropriate standardized tests; or (c). Marked impairment in age-appropriate personal functioning, documented by history and medical findings and including, if necessary, appropriate standardized tests; or (d). Marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.11.

In support of his argument, plaintiff simply recites portions of the record and plaintiff's mother's testimony but fails to explain how he meets, medically equals, or functionally equals Listing 112.11. The Court finds that this does not satisfy his burden of proof. Moreover, the evidence does not support that plaintiff meets this Listing. For example, plaintiff's mother, plaintiff, and Gonzales all agree that plaintiff's ADHD medication improved his condition. (Adm. Rec. at 39, 43, 213, 219). At the December 2010 consultative psychological assessment with Fontenelle, plaintiff had no deficits in his thought processes, thought content, perceptual abnormalities, mood/affect, sensorium/cognition, judgment/insight, or functional capacities. (*Id.* at 206-208). At step three of the sequential evaluation process, the burden remains on the claimant to establish that

he meets or medically equals a Listing. The burden is not on the Commissioner to prove that plaintiff does not satisfy a Listing. *See* 20 C.F.R. § 404.1520(d); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Listing 112.05 covers mental retardation and is characterized by significantly sub-average general intellectual functioning with deficits in adaptive functioning. 20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.05. A child can meet this Listing by satisfying requirements in one of five categories. Plaintiff does not indicate under which category he falls. However, this is not necessary as plaintiff does not satisfy any of the five categories. For one, no physician has ever diagnosed plaintiff with mental retardation, nor does anyone assert that plaintiff is mentally retarded. Although physicians felt that plaintiff may have a learning disorder, and plaintiff's IQ scores fell in the area of borderline intellectual functioning, he does not, in any category, satisfy the requirements to meet Listing 112.05. Plaintiff has the burden of proof to establish that his impairments meet or equal a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). In order to meet or equal a Listing, the impairment must meet all of the specified criteria. *Id.* at 530 (finding that "[a]n impairment that manifests only some of these criteria, no matter how severely, does not qualify"). The Court finds that plaintiff fails to meet that burden.

After consideration of the evidence as a whole, including the objective medical evidence and testimony at the hearing, the ALJ properly found that plaintiff does not meet, medically equal, or functionally equal any of the listed impairments. (*Id.* at 16-25). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence. The ALJ's ultimate determination that plaintiff's severe impairments do not meet, medically equal, or functionally equal the criteria of any

Listing is supported by substantial evidence.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 18th day of February, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**